VELDE FORD SALES, INC., Plaintiff-Appellant, v. JOHN BEARCE FORD, INC., *et al.*, Defendants-Appellees (University Ford of Peoria, Inc., Proposed Intervenor).

Third District   No. 3—89—0730

Opinion filed August 7, 1990.—Rehearing denied September 20, 1990.

Elliff, Keyser, Oberle & Davies, P.C., of Pekin (Burt L. Dancey, of counsel), for appellant.

Michael R. Feagley and Phillip S. Reed, both of Mayer, Brown & Platt, of Chicago (Michele Odorizzi, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

Suit was brought by Velde Ford Sales, Inc., against John Bearce Ford, Inc., and Ford Motor Company, Inc., on February 18, 1988, pursuant to section 12 of the Illinois Motor Vehicle Franchise Act (Ill. Rev. Stat. 1987, ch. 121½, par. 751 *et seq.*). Velde sought declaratory and injunctive relief to prevent the proposed relocation of defendant John Bearce Ford.

We dismissed a prior interlocutory appeal brought by the proposed intervenor, University Ford of Peoria, on the ground that appellate jurisdiction was lacking. (*Velde Ford Sales, Inc. v. John Bearce Ford, Inc.* (1989), 194 Ill. App. 3d 951, 551 N.E.2d 808.) It now appears that during the pendency of the prior appeal, the circuit court entered final judgment in favor of defendants, from which plaintiff Velde appeals; however, University Ford has not joined in this appeal. Under the circumstances, before proceeding to the merits of this appeal, we wish to make clear that there is no indication of record that Univer-

sity Ford's interests have not been fully and fairly represented by Velde both in the trial court and in this appeal.

Velde's complaint sought a judicial determination as to whether good cause existed for the proposed relocation under sections 12(b) and (c) of the Act. Attached to the complaint was a letter from Ford to Velde dated December 22, 1987, stating, *inter alia,* that pursuant to a 1987 market study for the Peoria area, John Bearce would be relocated and that the planned action would be considered approved on March 1, 1988.

Ford moved to dismiss the complaint on the ground that it had entered into an agreement in 1972 which gave Ford the right to appoint additional dealers to plaintiff's market area after conducting a market study and providing notice to plaintiff. Velde concedes that the terms of the 1972 agreement, which was attached to Ford's motion, would permit the proposed relocation of John Bearce. Velde resisted the motion, however, on grounds that Ford did not establish by affidavit that the agreement had not been materially amended, and that the December 22, 1987, notice was defective by not specifying the date as of which John Bearce would be operating in its new location.

In response, Ford filed an affidavit of its manager of the dealer contracts department which stated that the parties' June 1, 1972, agreement had not been materially amended between its effective date and December 24, 1987, the date Velde received Ford's letter of intent to relocate John Bearce.

Thereafter, Velde filed affidavits of its vice-presidents, Tim and Bruce Saurs, who stated that Tim had been approached by Ford's district service manager, J.C. Collins, in the fall or winter of 1987 concerning Tim's purchase of an ownership interest in Velde because his father, Bruce, was suffering from health problems during this period. According to the affidavits, Collins stated that approval of Tim's application for the stock purchase "would be no problem, as such approval was a 'done deal.'" Tim submitted his application in January 1988, but it was not formally approved until September 1988.

The trial court heard arguments on Ford's motion to dismiss, and on October 12, 1989, granted it with prejudice.

In this appeal, Velde contends: first, that Ford's letter of December 22, 1987, was insufficient notice under the Illinois Motor Vehicle Franchise Act; second, that the relevant date for determining the parties' rights was not December 22, 1987; and third, that Velde established a material amendment to the 1972 sales and service agreement sufficiently to withstand Ford's motion to dismiss. For reasons that

follow, we reject each argument.

The Illinois Motor Vehicle Franchise Act was enacted effective June 29, 1979, with the express purpose of

"promot[ing] the public interest and welfare, and *** to regulate motor vehicle manufacturers, distributors, wholesalers and factory or distributor branches or representatives, and to regulate dealers of motor vehicles doing business in this State in order to prevent frauds, impositions and other abuses upon its citizens, to protect and preserve the investments and properties of the citizens of this State, and to provide adequate and sufficient service to consumers generally." (Ill. Rev. Stat. 1987, ch. 121½, par. 751.1.)

The Act declares that

"[i]t shall be deemed a violation for a manufacturer, a distributor, a wholesaler, a distributor branch or division or officer, agent or other representative thereof: *** to relocate an existing motor vehicle dealership within or into a relevant market area of an existing franchise of the same line make. However, *** if the manufacturer wishes to relocate an existing motor vehicle dealership, then the manufacturer shall give notice in writing to the existing dealer or dealers of the same line make whose relevant market area includes the proposed location of the *** relocated franchise, at lease 60 days prior to the grant or establishment of the *** relocated franchise. Unless the parties agree upon the *** establishment of such *** relocated franchise, the propriety of the *** relocating of an existing motor vehicle dealership shall be determined pursuant to the guidelines of Section 12, with the franchiser having the burden of proof." (Ill. Rev. Stat. 1987, ch. 121½, par. 754(e)(8).)

Section 12 provides that

"[i]f the franchiser and the franchisee have not agreed to submit a dispute, involving *** the relocating of an existing motor vehicle dealership, to arbitration *** a proceeding for a remedy other than damages shall be commenced by the objecting franchisee in the Circuit Court of the County in which the objecting franchisee has its principal place of business, within 60 days of the date the franchisee received notice of *** the relocating of an existing motor vehicle dealership at a location within or into a relevant market where the same line make of motor vehicle is then represented.

*** [W]hen determining whether good cause has been established for *** relocating an existing motor vehicle dealership

\*\*\* the arbitrators or court shall consider all pertinent circumstances \*\*\*." Ill. Rev. Stat. 1987, ch. 121½, pars. 762(b), (c).

Also of particular relevance to this appeal is the case of *Ace Cycle World, Inc. v. American Honda Motor Co.* (7th Cir. 1986), 788 F.2d 1225. In *Ace*, as here, an existing franchisee (Ace) sought to enjoin Honda's establishment of another franchise within Ace's market area. It appears that Ace and Honda had entered into a franchise agreement in March of 1983 which allowed Honda to define Ace's market area "from time to time." Later that year, the Motor Vehicle Franchise Act was amended to define a "relevant market area" as "the greater of 'the area within a 10 mile radius from the principal location of the franchise' or the area defined in the franchise agreement." (See 788 F.2d at 1226.) In March 1985, Honda notified Ace that it would establish another franchise, R.P.M. Honda, within four miles of Ace's dealership. Ace then entered into a new franchise agreement with Honda and immediately thereafter filed suit for relief under the Motor Vehicle Franchise Act. On these facts, the Federal court ruled that Honda had vested rights under the 1983 agreement that were not impaired by the amendment to the statute and remained in effect at the time of Honda's notice to Ace in 1985. The court held, accordingly, that Ace had no cause of action under the Act.

Plaintiff argues that the notice in this case was insufficient under the statute because it stated only that the planned action would be considered "approved" as of March 1, 1988. Plaintiff points to language in *Ace* wherein the court indicated that "a notice of intent results in the accrual of nothing until the actual grant" of the new franchise. (788 F.2d at 1227.) The statute refers to the "grant or establishment" of a relocated franchise.

██ Plaintiff's argument on this point is not well taken. Clearly the intent of the statute is to give fair notice to the existing franchisee so that any objections can be formulated and communicated to the franchiser before the market is affected by the proposed change. That purpose was served by the December 22, 1987, notice in this case, which gave plaintiff a little more than 60 days to oppose the relocation before defendants moved ahead with their plans.

Next, plaintiff suggests that March 1 should be the relevant date for determining the rights of the parties. The trial court determined that the relevant date was December 24, the date the franchisee received notice of the planned relocation.

██ A cause of action under the statute accrues when the existing franchisee receives notice of the proposed relocation. (Ill. Rev. Stat. 1987, ch. 121½, par. 762(b).) And, the relative rights of the par-

ties must be determined as of the date the cause of action accrued. (*Ace*, 788 F.2d at 1226-27.) Ford's 60-day notice of "approval" of the proposed relocation of John Bearce is the functional equivalent of a notice of "grant" as referred to in the statute or the notice of proposed operation of the new franchise in *Ace*. To hold that the relative rights of the parties were not determined until March 1, 1988, some two weeks after the complaint in this case was filed, makes even less sense than determining the parties' rights with reference to the date suit was filed, an alternative rejected by the court in *Ace*. Accordingly, we hold that the trial court correctly concluded that the parties' rights were determined on December 24, 1987.

Finally, we consider plaintiff's argument that the parties' 1972 agreement was materially amended in the fall of 1987 such that the Motor Vehicle Franchise Act controls, requiring defendants to show good cause for the proposed relocation. The trial court rejected plaintiff's position that the conversation between Bruce and Tim Saurs and Ford's representative respecting a change in the ownership of Velde effectively amended the parties' 1972 agreement. So do we.

It has been consistently held that vested contractual rights will not be impaired by retroactively applying the Motor Vehicle Franchise Act. (See *Ace*, 788 F.2d at 1227 (and cases cited therein).) In this case, the "done deal" referred to in the parties' conversation quite clearly was contingent at the very least upon Tim Saurs' submission of his application for the stock purchase. Moreover, the 1972 agreement expressly states that any amendments must be in writing and approved by Ford. Since Saurs' application was not even submitted for Ford's approval until January, 1988, the proposed change in ownership had no effect upon the parties' 1972 agreement, which plaintiff concedes permitted Ford to relocate John Bearce Ford, as aforesaid. Accordingly, the trial court correctly ruled that plaintiffs had no cause of action under the Motor Vehicle Franchise Act.

The judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

SCOTT and STOUDER, JJ., concur.